IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| KELVIN SMITH, ET AL. | § | |
| --- | --- | --- |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 3-07-CV-1547-BD |
| | § | |
| A.R. MACHORRO | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Antonio Machorro has filed a motion for summary judgment in this *pro se* civil rights action brought under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Texas law. For the reasons stated herein, the motion is granted.

I.

On August 25, 2005, Plaintiffs Kelvin Smith and his wife, Angelia, both of whom are African-American, went to a Famous Footwear store in the Valley View Mall to purchase a pair of shoes. (*See* Plf. Orig. Pet. at 3, ¶ 5). Shortly after plaintiffs entered the store, the manager announced a "Code 183" over the loud speaker. (*Id.* at 4, ¶ 5). Plaintiffs, who were the only customers in the store, asked a sales clerk to explain a "Code 183." (*Id.*). The clerk told plaintiffs that the code is used to identify potential shoplifters. (*Id.*). Believing they were the victims of racial profiling, plaintiffs confronted the store manager and angrily demanded the telephone number for the corporate office. (*Id.* at 5, ¶ 5). The manager refused to give plaintiffs the phone number and ordered them out of the store. (*Id.*).

Plaintiffs left the Famous Footwear store and reported the incident to someone at the mall courtesy desk. (*Id.* at 6, ¶ 5). While at the courtesy deck, plaintiffs were confronted by Machorro, an off-duty Dallas police officer who was working security at the mall. (*Id.*). According to plaintiffs, Machorro accused them of unspecified "criminal activity," refused to let them explain their version of the incident, and detained them for more than 30 minutes while he conducted an investigation. (*See id.* at 6-9, ¶ 5). Relying on information provided by the Famous Footwear store manager, who accused Kelvin Smith of threatening to strike her with a cane, Machorro cited Kelvin for misdemeanor assault and issued a criminal trespass warning. (*Id.* at 9-10, ¶ 5). The assault case was dismissed when the complaining witnesses failed to appear for trial.

On August 25, 2007, plaintiff sued Famous Footwear, Brown Shoe Company, Valley View Center a/k/a Valley View Mall Macerich, and Machorro in Texas state court for federal civil rights violations and state common law torts. After the case was removed to federal court,[1] plaintiffs settled with all parties except Machorro, who now moves for summary judgment as to all claims and causes of action. Plaintiffs were ordered to file a response to the motion by March 6, 2008, (*see* Doc. #38), but have failed to do so. The court therefore considers the summary judgment motion without the benefit of a response.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U .S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See*

---

[1] Federal jurisdiction is proper because plaintiffs' civil rights claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). Once the movant meets this burden, the nonmovant who has the burden of proof at trial must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). Where, as here, the nonmovant has not filed a summary judgment response or submitted any controverting evidence, the court may accept as true the undisputed facts adduced by the movant. *See Tillison v. Trinity Valley Electric Cooperative, Inc.*, No. 3-03-CV-2480-D, 2005 WL 292423 at *1 (N.D. Tex. Feb. 7, 2005), *citing Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996).[2] All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

### III.

The operative pleading in this case is plaintiffs' state court petition. Liberally construed, this pleading appears to assert claims against Machorro for: (1) race discrimination under 42 U.S.C. § 1981; (2) false arrest, unlawful detention, and use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; and (3) false arrest, unlawful detention, and malicious prosecution under Texas common law. Machorro contends that he is entitled to summary judgment because, *inter alia*, plaintiffs cannot overcome his affirmative defenses of qualified and official immunity.

---

[2] Although the verified pleadings of *pro se* litigants can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Fed. R. Civ. P. 56(e), *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), none of the pleadings filed by plaintiffs in this case are made under oath or are admissible as evidence.

A.

The court initially observes that plaintiffs have failed to state a cognizable claim under 42 U.S.C. § 1981. That statute provides, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.] For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. In order to prove a section 1981 violation, plaintiffs must show: (1) that they are racial minorities; (2) that Machorro intentionally discriminated against them on the basis of race; and (3) that the discrimination concerned the "making or enforcement" of a contract. *See Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 739 (1998). Although plaintiffs arguably have satisfied the first two elements, no facts are alleged to suggest that any discrimination on the part of Machorro concerned the "making or enforcement" of a contract. Machorro is entitled to summary judgment as to this claim. *Id.*; *see also Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743, 752-53 (5th Cir. 2001) (customer falsely accused of shoplifting was not deprived of any contractual interest that could support section 1981 liability); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994) (plaintiff failed to state a section 1981 claim where he did not "complain that [defendant] refused to contract with him or that [defendant] somehow impeded his right to enforce a contract in either the courts or nonjudicial avenues").

B.

Plaintiffs also sue Machorro for false arrest, unlawful detention, and use of excessive force in violation of their rights under the Fourth and Fourteenth Amendments to the United States

Constitution. Machorro argues that plaintiffs cannot prove the essential elements of their constitutional claims or overcome his defense of qualified immunity.

1.

The Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, provides redress for persons deprived of any rights, privileges or immunities by a person "acting under color of state law." An off-duty police officer employed as a private security guard is considered a "state actor" for purposes of section 1983 liability. *See Salazar v. Luty*, 761 F.Supp. 45, 47 (S.D. Tex. 1991). However, police officers, like other public officials, are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority, unless their conduct violates a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The threshold issue in any qualified immunity analysis is "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.), *cert. denied*, 125 S.Ct. 102 (2004). Only if the plaintiff sufficiently alleges the violation of a constitutional right does the court decide whether that right was clearly established at the time of the alleged violation and whether the conduct of the police officer was objectively unreasonable under the circumstances. *See Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1355 (2003). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct

violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

2.

In support of his motion for summary judgment, Machorro provides a sworn affidavit explaining his version of the encounter with plaintiffs at the Valley View Mall:

> On . . . the date of [the] incident made the basis of this lawsuit, I was performing off-duty uniformed security work for Valley View Mall, a shopping mall in Dallas, Texas. I received a call on the mall radio to go to Famous Footwear, a shoe store in the mall. I understood the situation was a disturbance. I walked into Famous Footwear and spoke to the manager, a female, who advised me that a man had made a threat to strike her with a cane. She also told me that the man who uttered the threat was with a woman, but both of them had left the store. I understood from the manager that the man and woman perceived they were subjected to racial discrimination, became angry, and that the man approached the manager in a threatening manner, raised his cane within a foot of the manager, and stated "anybody touch me and I'll beat you down with my cane." I also learned that the incident began with a store announcement of a certain code number.
>
> After speaking with the manager, I next received a call from the mall courtesy desk, which advised me that a man and woman were at the desk and wanted to make a complaint against the manager of Famous Footwear. I left Famous Footwear and went to the desk where I met the man and woman. Both individuals were very upset and agitated. I listened to them and then asked them to wait at the desk while I finished my investigation. I then spoke to the manager of Famous Footwear. At the courtesy desk, the manager identified the couple as having been involved in the disturbance, and specifically identified the man as having threatened her with his cane. I asked the manager if she wanted to prosecute the man for assault, and she said "yes." I asked the man for identification which he provided, and I issued a citation to the man, Mr. Kelvin Smith, for misdemeanor assault. I also issued a criminal trespass warning to Mr. Smith at the request of the manager of Famous Footwear. I recall Mr. Smith and his female

> companion complained that he needed to sit in his car. I inquired if he needed an ambulance, and he refused.
>
> At no time during this incident did I use profanity or racial epithets toward Mr. Smith or his female companion. The force level I used was open hand control-light touch simply to detain Mr. Smith, and neither Mr. Smith nor his female companion was injured by me.

(Def. MSJ App. at 1-2). Viewed in the light most favorable to plaintiffs, this evidence shows that Machorro briefly detained Kelvin Smith and his wife while he investigated a complaint involving possible criminal activity. Relying on information from the Famous Footwear store manager, which he deemed to be credible, Machorro cited Kelvin for misdemeanor assault. Plaintiffs were never placed under arrest. Neither the brief investigatory stop nor the citation issued to Kelvin Smith violated any clearly established constitutional right. To the contrary, both actions are consistent with well-established Fourth Amendment jurisprudence. *See, e.g. United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir.), *cert. denied*, 115 S.Ct. 102 (1994), *citing Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968) ("Police officers may briefly detain individuals . . ., even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot."); *Holland v. Harmon*, No. 3-97-CV-0754-D, 1998 WL 292361 at *1 (N.D. Tex. May 28, 1998), *quoting Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861-62, 43 L.Ed.2d 54 (1975) (police officer has probable cause to stop, detain, and issue a citation if the "facts and circumstances [are] 'sufficient to warrant a prudent man [] believing that the [suspect] had committed or was committing an offense'"). Nor can plaintiffs prevail on their excessive force claim. Not only is there no evidence that the force used by Machorro was clearly excessive to the need, but Kelvin Smith sustained no injury. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999), *op. clar. on rehrg*, 186 F.3d 633 (5th Cir. 1999) (plaintiff must suffer more than *de minimis*

injury to maintain excessive force claim). Without any evidence or argument from plaintiffs to controvert these facts, Machorro is entitled to summary judgment on his qualified immunity defense.

C.

Machorro is also entitled to summary judgment on his defense of official immunity with respect to plaintiffs' state law claims. Official immunity in Texas is essentially the same as qualified immunity under federal law. *See McCall v. Peters*, No. 3-00-CV-2247-D, 2003 WL 21488211 at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 Fed. Appx. 862 (5th Cir. 2004), *citing Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997), *abrog. on other grounds by Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999). The technical distinction between the two defenses is that qualified immunity requires the officer to act in accordance with clearly established law, whereas official immunity requires the officer to act in good faith. *Id.* For the same reasons discussed above, plaintiffs have failed to adduce any evidence that Machorro did not act in good faith when he briefly detained them to investigate potential criminal activity and when he cited Kelvin Smith for misdemeanor assault.

## **CONCLUSION**

Defendant Antonio Machorro's motion for summary judgment [Doc. #18] is granted. The court will dismiss this action with prejudice by separate judgment filed today.

SO ORDERED.

DATED: March 12, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE